2024R00215/MHS

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| | : | |
| v. | : | Crim. No. 24- |
| | : | |
| MANSINH CHAUDHARI, | : | 18 U.S.C. § 1349 |
| a/k/a "Monsi Koova" | : | 18 U.S.C. § 371 |

## I N F O R M A T I O N

The defendant having waived in open court prosecution by Indictment, the Attorney for the United States for the District of New Jersey charges:

### COUNT ONE
(Conspiracy to Commit Health Care Fraud)

1.  Unless otherwise indicated, at all times relevant to this Information:

**Relevant Individuals and Entities**

a.  MANSINH CHAUDHARI, a/k/a "Monsi Koova," was a resident of Illinois who owned, operated, and/or had a financial or controlling interest in a New York-based consulting company ("Company 1").

b.  Company 1 obtained from marketers information and documents amounting to a guarantee that Medicare would reimburse the purchase of over-the-counter ("OTC") COVID-19 tests, including a prospective beneficiary's name, contact information, insurance information, and a recording that purported to represent a prospective beneficiary's consent to receive OTC COVID-19 tests (collectively, "COVID Test Orders"). Company 1 sold COVID Test Orders to various medical providers who would submit and/or cause the submission to Medicare of

claims for OTC COVID-19 tests. These medical providers included, among others, "Individual 1," a provider based in or around New Jersey; "Individual 2," a provider based in or around Tennessee; "Individual 3," a provider based in or around Colorado; "Individual 4," a provider based in or around Colorado; "Individual 5," a provider based in or around Louisiana; "Individual 6," a provider based in or around Connecticut; "Individual 7," a laboratory owner based in or around Utah; and "Individual 8," a provider based in or around New Jersey (collectively, the "Medical Providers").

   c. As described more fully below, CHAUDHARI entered into arrangements with the Medical Providers and others, whereby CHAUDHARI sold COVID Test Orders to the Medical Providers and others so they could fraudulently bill Medicare for eight OTC COVID-19 tests per claim per month—the maximum allowable by Medicare—even though the tests were not legitimately requested by a beneficiary and were not eligible for reimbursement.

   d. To conceal the arrangement, CHAUDHARI, the Medical Providers, and others generally entered into sham agreements, sometimes titled "EDUCATIONAL PROGRAM & SUPPLY SERVICES AGREEMENT," in which, among other things, the parties falsely agreed to comply with the Federal Anti-Kickback Statute.

### Background on the Medicare Program

   e. Medicare was a federally funded program established to provide medical insurance benefits for individuals age 65 and older and certain disabled

individuals who qualified under the Social Security Act. Individuals who receive benefits under Medicare were referred to as "Medicare beneficiaries."

   f. Medicare was administered by the Center for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.

   g. Medicare was a "health care benefit program," as defined by 18 U.S.C. § 24(b), and a "Federal health care program," as defined by 42 U.S.C. § 1320a-7b(f), that affected commerce.

   h. Medicare was divided into four parts, which helped cover specific services: Part A (hospital insurance), Part B (medical insurance), Part C (Medicare Advantage), and Part D (prescription drug coverage).

   i. Medicare would not pay claims for services that it knew were procured through kickbacks in violation of the Federal Anti-Kickback Statute.

### Over-the-Counter COVID-19 Tests

   j. Starting on or about April 4, 2022, and continuing through the duration of the COVID-19 public health emergency, Medicare covered and paid for OTC COVID-19 tests at no cost to beneficiaries. This program was intended to ensure that beneficiaries had access to COVID-19 tests that they needed to stay safe and healthy during the COVID-19 pandemic. Eligible providers capable of providing ambulatory health care services, which did not include chiropractors, were permitted to distribute to beneficiaries OTC COVID-19 tests that were approved, authorized, or cleared by the U.S. Food and Drug Administration.

k.  Medicare would not pay for more than eight OTC COVID-19 tests, per calendar month, per beneficiary. Providers could distribute OTC COVID-19 tests only to beneficiaries who requested them, and providers were required to keep documentation showing a beneficiary's request for the tests. Medicare did not cover OTC COVID-19 tests distributed to beneficiaries during an inpatient stay at a hospital or skilled nursing facility.

## The Conspiracy

2.  From at least in or around November 2022 through in or around October 2023, in the District of New Jersey, and elsewhere, the defendant,

**MANSINH CHAUDHARI,**
**a/k/a "Monsi Koova,"**

did knowingly and intentionally conspire and agree with others to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, any of the money owned by, and under the custody and control of, a health care benefit program, as defined by 18 U.S.C. § 24(b), in connection with the delivery of, or payment for, health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347.

## Goal of the Conspiracy

3.  The goal of the conspiracy was for CHAUDHARI and others to enrich themselves unlawfully by submitting and causing the submission of false and fraudulent claims for OTC COVID-19 tests to Medicare.

## Manner and Means

4.  The manner and means by which CHAUDHARI and others sought to accomplish the object of the conspiracy included, among other things, the following:

   a.  CHAUDHARI was a member of a group of entrepreneurs (the "CHAUDHARI Group") whose members generally met multiple times per year in the United States and elsewhere to discuss various business enterprises.

   b.  CHAUDHARI discussed with various associates, including the Medical Providers and members of the CHAUDHARI Group, participation in what CHAUDHARI referred to as the "COVID Campaign."

   c.  As part of the COVID Campaign, CHAUDHARI entered into arrangements with co-conspirators, including the Medical Providers, members of the CHAUDHARI Group, and others, in which CHAUDHARI would sell COVID Test Orders to co-conspirators so that co-conspirators could fraudulently bill Medicare for OTC COVID-19 tests even though the tests were not legitimately requested by a beneficiary and were not eligible for reimbursement.

   d.  CHAUDHARI and his co-conspirators submitted and/or caused the submission of claims to Medicare for the OTC COVID-19 tests.

   e.  Based on the submission of these claims, co-conspirators including the Medical Providers received from Medicare payments that they were not entitled to receive.

   f.  Co-conspirators including the Medical Providers generally paid a kickback to CHAUDHARI of approximately $46 for each beneficiary lead that CHAUDHARI sold to them.

    g. CHAUDHARI, in turn, generally paid a kickback of approximately $36 or $32 to the entity that supplied him with the beneficiary information.

    h. CHAUDHARI and co-conspirators took various steps to conceal their scheme.

    i. CHAUDHARI also discussed with co-conspirators how he and/or others would respond to inquiries regarding the scheme, including by falsely reporting that Company 1 merely provide OTC fulfillment services to the Medical Providers. In reality, Company 1 did not itself provide any OTC fulfillment services. The Medical Providers' payments to Company 1 were in fact payments to CHAUDHARI for beneficiary leads for OTC COVID-19 Tests.

    j. CHAUDHARI, through Company 1, issued invoices to co-conspirators that included false line items, including consulting fees and/or "CMS OTC fulfilment." CHAUDHARI, through Company 1, would manipulate the hourly rate and quantity of hours reflected in the invoices in order to match the false line items.

    k. CHAUDHARI and co-conspirators knew beneficiaries did not request the OTC COVID-19 tests or want the OTC COVID-19 tests because multiple beneficiaries complained about receiving unwanted tests and/or threatened to contact Medicare about fraud related to their receipt of the tests.

    l. CHAUDHARI submitted and/or caused the submission of false and fraudulent claims to Medicare for OTC COVID-19 tests that were: (1) never requested by a Medicare beneficiary; (2) never received by a Medicare beneficiary;

and/or (3) provided based on a physician order procured through the payment of kickbacks and bribes.

    In violation of Title 18, United States Code, Section 1349.

## COUNT TWO
(Conspiracy to Violate the Federal Anti-Kickback Statute)

5. The allegations in Paragraphs 1, 3, and 4 of this Information are hereby incorporated and re-alleged as if set forth fully here.

6. From at least in or around November 2022 through in or around October 2023, in the District of New Jersey, and elsewhere, the defendant,

**MANSINH CHAUDHARI,**
**a/k/a "Monsi Koova,"**

did knowingly and intentionally conspire and agree with others to commit offenses against the United States, namely, to knowingly and willfully solicit and receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b(f), namely Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(1)(A).

### Goal of the Conspiracy

7. The goal of the conspiracy was for CHAUDHARI and others to unlawfully enrich themselves by soliciting and receiving kickbacks and bribes related to their submission and causing the submission of false and fraudulent claims for OTC COVID-19 tests to Medicare.

## Overt Acts

8. In furtherance of the conspiracy, and in order to effect its object, CHAUDHARI and others committed and caused the commission of the following overt acts in the District of New Jersey and elsewhere:

    a. On or about December 16, 2022, CHAUDHARI sent an invoice to Individual 7 seeking payment for beneficiary leads CHAUDHARI had sold to Individual 7. The invoice was from Company 1 and sought $4,800 in payment for a quantity of 800 units of "CMS OTC fulfillment" at a rate of $6.00.

    b. On or about January 20, 2023, Individual 8 e-mailed CHAUDHARI an executed "EDUCATIONAL PROGRAM & SUPPLY SERVICES AGREEMENT" on behalf of Individual 8's practice.

    c. On or about January 26, 2023, CHAUDHARI provided access to information regarding approximately 1,000 beneficiaries to Individual 8.

    d. On or about March 21, 2023, CHAUDHARI e-mailed to Individual 8 "WIRE INSTRUCTIONS" associated with Company 1. On or about March 23, 2023, a bank account associated with Individual 8's practice transferred approximately $71,935.36 to Company 1.

    e. On or about February 6, 2023, CHAUDHARI e-mailed a proposed "EDUCATIONAL PROGRAM & SUPPLY SERVICES AGREEMENT" to an e-mail address associated with Individual 6's practice.

    f. On or about February 7, 2023, CHAUDHARI sent a message to Individual 6 that contained wire instructions for Company 1. Later that day, Individual 6 sent the following message to CHAUDHARI: "I wired you the money."

      g.      On or about May 2, 2023, CHAUDHARI sent the following message to Individual 6: "I checked since Feb till now .. you're short . . . $11,312." On or about May 11, 2023, CHAUDHARI sent the following message to Individual 6: "Balance due $11312 when u get a moment." On or about May 12, 2023, Individual 6 replied: "I will pay you in the beginning of the week." On or about May 18, 2023, Company 1 received a payment of approximately $11,312 from a bank account associated with Individual 6.

      h.      On or about July 7, 2023, the office manager associated with Individual 6's practice e-mailed CHAUDHARI that the practice had "been getting phone calls from very frustrated medicare patients that are receiving bills from medicare for covid kits they had never requested," and that one patient "is threatening [to] open a fraud claim to Medicare." CHAUDHARI later replied that he would "follow up with marketing company."

      i.      On or about March 23, 2023, approximately $439,320.00 was transferred to Company 1 from a bank account associated with Individual 5.

      j.      On or about April 10, 2023, approximately $73,640.00 was transferred to Company 1 from a bank account associated with Individual 5.

      k.      On or about April 25, 2023, approximately $350,000.00 was transferred to Company 1 from a bank account associated with Individual 5.

      l.      On or about May 9, 2023, approximately $68,432.00 was transferred to Company 1 from a bank account associated with Individual 5.

In violation of Title 18, United States Code, Section 371.

## **FORFEITURE ALLEGATION**

1. Upon conviction of one or both of the offenses alleged in Counts One and Two of this Information, the defendant, MANSINH CHAUDHARI, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the defendant obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of each such offense, and all property traceable to such property.

## **SUBSTITUTE ASSETS PROVISION**

2. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

_____
VIKAS KHANNA
Attorney for the United States,
Acting Under Authority
Conferred
By 28 U.S.C. § 515

12

CASE NUMBER: _____

# United States District Court
# District of New Jersey

**UNITED STATES OF AMERICA**

v.

**MANSINH CHAUDHARI,**
a/k/a "Monsi Koova"

# INFORMATION FOR

18 U.S.C. § 1349
18 U.S.C. § 371

VIKAS KHANNA
ATTORNEY FOR THE UNITED STATES
ACTING UNDER AUTHORITY CONFERRED
BY 28 U.S.C. § 515

MATTHEW SPECHT
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY
(973) 353-6061